The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the 4th Circuit are admonished to draw an eye and give their attention for the Court is now sitting. God save the United States and this Honorable Court. You may be seated. I want to welcome everyone to the 4th Circuit Court of Appeals this morning. It's good to have you with us. We have two interesting cases. We have some guests from Virginia Military Institute. It's good to have you all here. Most importantly, we have good lawyers and we're looking forward to the arguments. In the first case, Lowy v. Daniel Defense, et al., Ms. Lockwood. Good to have you with us, Ms. Lockwood. Thank you, Your Honor. May it please the Court. My name is Liz Lockwood, and I represent Plaintiffs Karen Lowy and her minor daughter who are watching live today, and Antonio Harris, who is here with us in the courtroom, all of whom have brought suit against manufacturers of AR-15 weapons, ammunitions, and accessories based on their deceptive and misleading advertising. Which glorified and promoted their products for militaristic and illegal purposes to a young man who then replicated exactly what he saw in defendant's advertising using their products. Just like he saw in defendant's ads. He packed his AR-15s in his car, set up a sniper's den across from a school from high above, looked down his scope, and targeted the cars in the pickup line. And plaintiffs were the direct victims of that gun violence. The causal chain is as simple as that. Defendants deceptively advertised their products for illegal purposes in violation of various laws. Those violations were a cause of the shooting that followed because the shooter used defendant's products for the same illegal purpose they promoted. So, I mean, when you think about it, you're talking about a group of ads by different entities, and you say it caused this injury. What specifically? And is it, because we're at a 12 v. 6, we're at the motion to dismiss stage, and I realize a number of things you have there alleged upon information and belief. But what specifically do you think you're going to need in discovery to be able to establish that the defendant caused this injury? Well, proximate cause requires that we show that the defendant's actions were a cause of the injury. And there's a number of avenues of discovery that we expect to explore. Some within defendant's possession, information related to where they placed their ads, who they were targeting, the breadth of their reach, but also plenty of information not in defendant's possession. Social media companies, their tracking of the accounts, various advertising, the online websites where the shooter purchased many of these products, the advertising he was exposed to then through that channel. You know, third party marketing consultants who would have assisted defendants in creating these campaigns and promoting them. So there's a number of avenues that we intend to explore during discovery. And to get back to the question about what we need to prove, you know, here the district court dismissed our 80-page complaint in an 11-page order based on Article III and proximate cause grounds, which obviously require... That would be under 12b-1. That's right, Your Honor. Lack of standing. That's right, Your Honor. And I was talking about the causal chain more broadly. But before you can get to 12b-6, you've got to get some way past 12b-1, right? That's right, Your Honor. And 12b-1 at this stage requires, you know, depending on the way the court wants to look at it, either a determinative or coercive effect or a predictable effect. And we've certainly, no matter which lens the court takes, we have adequately alleged... That's a hard... I mean, that's a pretty... If we're looking at those two alternatives, I mean, that's a... I know you say you make both of them, but I don't see how you have pled, and quite frankly I'm not faulting you on that, I don't know how you could plead determinative and coercive. I mean, just the nature of that requirement, when you look at the cases that have found it, it just seems to me like that, if that's the question, you face an extraordinary hurdle to show that. Well, Your Honor, at the pleading stage, Article III standing requires something less than what the district court found required here. So the district court interpreted determinative or coercive effect to require allegations that the defendants coerced the shooting. Well, determinative and coercive effect, I mean, it's not influence, it's determinative and coercive, just by its very words. And the cases that have done it, like Bennett, and there's a Ninth Circuit case that applies it and finds it when there is a, you know, almost a legal obligation. There's a Homeowners Association case we have here in the Fourth Circuit that does that. I mean, those are almost, you know, legal requirements to do something. And it seems like your theory is that, you know, there are folks out there who are potentially vulnerable to these ads, and I hear that, and accepting that is true. I'm just seeing how that, even if it's true, could ever rise to determinative and coercive. Now, I get your argument that you've got a different standard, but it seems to me if you get that standard, you're facing a problem. I don't see how you can do it, discovery or not. Well, Your Honor, I think if we could look at the allegations that we've made, and especially focus on the imagery in the advertising in these campaigns, which the shooter went out and replicated in sort of a stark fashion. Sure. Your theory, that influence team, I want to do that, that's not determinative and coercive. I mean, he wasn't hypnotized. I mean, I don't mean to make light, this is a horrible situation, so I hope, I'm not trying to suggest otherwise, but it just seems like your allegations, giving them full acceptance, wouldn't establish that. It seems like you have to argue that's not required. Well, Your Honor, if I could try one more time, you know, I can give you some JA sites where we cite the influence that had on the shooter, and then perhaps we can talk about the predictable effects and why that's an alternative. But, you know, at JA 70, 71, 72, 48, 49, 60, 61, we talk about the imagery that's replicated. At JA 81, we talk about how the shooter has perceived these weapons to be superior, that he selected these and brought them to the location. I assume, I think, and I appreciate your, I read all that, and I think you're making as good argument as you can about that, but assume I'm hypothetically not convinced that you meet that standard. How do you, how does the Department of Commerce case, how can we read that to change the standard for standing? I'm not sure the court necessarily needs to find that it changed the standard. It is another lens to look at Article III standing. And the Department of Commerce case looked at, you know, in a similar situation to what we have here, whether there was a, the defendant's conduct had a predictable effect on a third party. And, you know, defendants claim that this case doesn't have any application here because Department of Commerce was about injunctive relief. We've cited two other cases. That seems, that doesn't seem particularly persuasive to me because an injunction case, you know, is by its very nature predictive, but it's predicted of likelihood of success. So you've still got to deal with whatever it is. It seems to me that case is different, that the issue with that case is we've got a jury, or a bench trial, and the nature of that case is that the census question could cause some people not to fill out censuses, and there was evidence that that was the case. So you weren't, you were talking about a broad policy that just had to have some effect, whereas here we have to have an effect on a particular, you know, individual who purchased these, you know, these firearms and weapons. So I just wonder if the better argument on standing for you is, you know, that we haven't like, I mean, all these cases are administrative law cases where we're looking at this determinative and coercive effect. And I just, applying it in a tort context like this seems odd. I mean, like I said earlier, I don't know how you would ever show it, and I just, it would seem if that's our standard, you just can't do it. And I wonder if we're not making traceability here too much like causation, and, you know, maybe we get the same result on causation, but it just, it feels like standing is becoming too much of a merits question. Well, Your Honor, just to address your point about the… Your position basically is we've got to take your complaint, the allegations of your complaint, as true. That's absolutely right, Your Honor, and we're… Accept them as true. That… And go from there. That's absolutely right, Your Honor, and… And that that's enough. Article 3 might require more, of course it requires more as the case goes on, but at this stage it certainly does not require that we show that the defendants coerced the shooter. And the predictable effects text has not only been applied in cases where you're talking about adjunctive relief. We cite a case of the Second Circuit in our opening brief, page 27, the Ataris-Bias case, where they, this was about injuries that had already occurred. It was a damages case, so I don't… All of that may well be true in terms of establishing standard, but you don't have all of the critical information that you need, and how would you in these cases? You can't get it from law enforcement. You can't get it from other places. You actually have to go through discovery, which is why I started out by saying what can you get out of discovery from this? And it may well be that when you get to summary judgment, that impossible or that incredibly high hurdle that Judge Qualibon describes may be there, but where we are now, we're just not there. And the question is, did you actually plead the coerciveness, and at least from your complaint, you seem to indicate, or at least you indicate pretty clearly there's an increased level of violence. So then when we're trying to connect what's here, your allegation, advertisers make guns and components, all kinds of parts and stuff, and they say, and then they advertise, if you put these things together, you can do this with it. Even showing it from your perspective in a light most favorable, not what would be actually proven at trial, that in a school setting is where you could be. You could be perched up and showing people with a gun, and it is remarkably similar to what happened in this case. A young man goes up, purchases himself just like in that ad, shoots into it, and causes all this horrific damage. Again, I think that if you progress to the summary judgment stage, and that's where we get muddled with 12B1 and 12B6 on it, but I think in terms of being able to get there, you've got to have the critical information. Again, why I pose the question, what do you get out of discovery from this matter? And it seems to me, even in cases like this, a trial court could easily just say, okay, let's move a little further along so I can consider some evidence. I can consider this, the stuff that jury ultimately may not be in your favor, may be in your favor. Yes, we agree. And I should just point out that the district court dismissed our information and belief pleadings. The district court criticized you for pleading on the basis of information and belief. And you pleaded, you did plead on the basis of information and belief, which is entirely proper with a pleading. And those pleadings need to be taken, well-pleaded facts taken in the light most favorable to you. And the 12B1 context, assessment on standing, that's your position. Yes, Your Honor, and I think we're on the same page about the permissibility of those information and belief pleadings. But the district court was wrong in discussing your use of information and belief in your complaint. It was wrong in how it dismissed the allegations as improper at this stage. So I think we're on the same page about that. Well, it did, but there's one point it made that's kind of interesting, and that is that it's only appropriate information when that information is held by the defendant themselves. That's an interesting point. I don't know of any case court has held that, that you can only plead with information and belief if the information is held by the defendant themselves. I'm not aware of any case who said that's the only route where it's permissible. It wouldn't make any sense for that to be the case. You know, in recent decisions from this court and Vaughn, for example, the courts reiterated the appropriateness of this type of information and belief pleading. And, you know, there are certainly circumstances where the information may only be in the defendant's possession. But there are plenty of circumstances where it would be in other folks' possession, as Judge Winn, you were highlighting, and as one of our amicus briefs highlighted as well. So, counsel, could I follow up on this? I think it's a very fair point that you can only plead what you can plead at the 12-B stage. I mean, we wouldn't want you to say a pun information and belief and just make stuff up. I mean, that would be, that can't be what you do here. So I appreciate the fact that at this stage of the case you're, you know, you don't have, you haven't conducted discovery. But how do you deal with a case like Iqbal, which dealt with, you know, national security stuff and, you know, things that were also hard to get, maybe even in discovery? And it seems like the, that case at least says, yeah, but, I mean, sometimes it may be harder than others. But, you know, the plausibility standard, I know you think you meet the plausibility standard as you've done it. But, you know, it seems like, it's not like we can say just because you can't get it. Iqbal tells us, hey, by the time you file a complaint, you have enough, have to have enough to meet that standard. And we have far more than the sort of bare pleadings that I think, you know, were at issue there. We haven't, we don't just have a collection of allegations on information and belief. We critically, which we know is necessary, have allegations which make those information belief pleadings far from speculative. So we allege that at JA81 on information belief that the shooter was exposed to and influenced by their marketing practices. Those allegations are backed up by the advertising that we highlight with imagery very close to what we have. Can I interrupt you? Because I, just on that point, don't, didn't you just plead yourself out of determinative and coercive? You said exposed to and influenced by. Even if that's true, isn't that by its very nature short of determinative and coercive? I don't think so, Your Honor. That's one paragraph out of our 88-page complaint. And against the context of the force of this advertising, you know, the fact that the shooter selected these products out of a larger collection of products and then brought them to build his cache of weapons and carry out the shooting is all part of the causal chain here. So I don't think we can look at that allegation alone. And I see that I've exceeded my 17 minutes. I'm happy to save the rest for rebuttal. As long as you have questions, you should answer them. Go ahead. Can I ask one more question? I think moving from standing to the merits, were we to get there, do you have a case where Virginia courts have applied the two Virginia statutes that you pled in a case where the plaintiff wasn't deceived? Yes, Your Honor. So, you know, I'll remind the court that both of those statutes are broad remedial statutes. But the Merriman v. Auto Excellence is under the Virginia Consumer Protection Act. And I don't have the cites here for the false advertising statute. I'm happy to get that on rebuttal. But those issues were briefed below. Defendants did not raise that as an alternative basis for affirmance. And so we don't have focused briefing on those statutes, for Your Honor. And there's, you know, other claims, of course, that we have here, the negligence and negligence per se. I understand. I'm asking about those two specific. But you have a situation right there where that was not that Virginia law has interpreted those to situations where a plaintiff isn't saying I'm deceived by the ads. Because your claim here is that this plaintiff wasn't deceived by, you know, false advertising or, you know, misrepresentative advertising. You're saying that it was very accurate and that this defendant took it the way you said it was going to be. Do you have a case where those statutes have been applied in that context? So that statute recognizes that the Virginia Consumer Protection Act only requires that misrepresentations be done in connection with the consumer transaction. This is a case, this is a statute that permits a suit by any person. And I believe that case did involve a downstream purchaser or someone who did not, you know, was not a part of the misrepresentation itself. Let me ask you one question. What exception under the PLCAA do you think your common law negligence claim falls under? The common law negligence claim, Your Honor, is pled against the magazine manufacturers who we've argued are exempt from PLACA. And so the common law negligence claim would proceed against them if the court were to accept our position that magazines are not qualified products under PLACA. Thank you. Make sure I understand that. So what you're saying, the exception, maybe tell me if I'm restating this incorrectly. You claim that the magazine suppliers, manufacturer suppliers, aren't covered because those aren't component parts. And therefore you would be able to proceed on that basis. That's right, Your Honor. As opposed to, okay, it's an argument that the act doesn't apply to them as opposed to an exception. That's right, Your Honor. Okay. If there are any further questions, I'm happy to take them or reserve the rest of my time for rebuttal. Thank you. You saved some time. Okay, thank you. Mr. Barnes. Good morning. Thank you, Your Honor, and good morning, Your Honors, and may it please the court. This case is not about whether the products that defendants sell ought to be illegal. And it's not about whether media that portrays guns in a positive light in general has the effect of increasing gun violence in general. Instead, what this case is about is whether 52 specific social media posts caused a specific shooting in the District of Columbia. To meet their pleading burden under Iqbal and Twombly, plaintiffs needed to allege that their injuries would not have occurred but for the particular posts that they sued over. But the complaint fails to allege facts to make it plausible that the shooter even saw these posts, much less that he influenced them. How would they get the information to be able to allege those specific facts? Granted, those facts ultimately would be necessary at some point in the trial. But at this stage, where you have such a horrific act, they have the ads themselves depicting at least what they characterize as being similar type things. You're seeing those ads are directed to transport the military type tactics and war tactics to civilians and targeting specifically young men out there. At this stage, without having any other information, how could they do that? Or is that possible to do that? I think it is possible, Your Honor. I have a few thoughts on that. First, it's clear enough from the allegations in the complaint that the plaintiffs could have sued the shooter's estate. And as part of that proceeding, they could have gotten discovery. Second, it's also clear. Let me understand that. You sued the shooter's estate for wrongful death or injury, negligence of that nature. And as a result of that, you will be able to determine what against the ads? I think as part of that proceeding, it would be possible for the plaintiffs to get discovery broadly, I would submit. And to the surrounding circumstances of this shooting and the shooter's behavior. I assume you're assuming the estate is going to then bring in the defendants and say that, so as to indicate a lesser form of culpability of negligence on their part, so that someone else is responsible for his conduct. Because of going against the estate directly, I'm not getting that. Unless because they are not alleging that this is a coercive type action. They're not alleging against the shooter himself for doing it, which you could. I mean, that seems like a clearer situation right there, but not on this case. It's not a case of this sort. Well, I don't think I'm assuming any particular defense strategy by the estate. But what I am assuming is that as part of that proceeding, it would be possible to get discovery into the surrounding circumstances of the shooting. I'm curious because thinking, I didn't litigate as recently as Judge Quattlebaum here, but I did spend a little time in trial working. I'd be interested as a lawyer, I'm suing an estate. How am I going to get that information that you say would be critical in establishing standing in this case? Who am I going to ask that and what am I going to say? Just give me an off-the-top-of-your-head answer. I'm going to accept it. Sure. I think it would be the same people that opposing counsel rattled off that she suggested that the plaintiffs would submit third-party subpoenas to in this case. I think they could issue those same third-party subpoenas in a proceeding against the estate. And I don't think it would particularly take that much because basically— You could also, if the theory is this particular defendant is particularly vulnerable, you would have that in the – the party that would have that would be – have that direct information. You're not even going outside the third parties for that sort of information, right? I think that's exactly right, Your Honor. Was this case filed – is it two-year statute of limitations in Virginia for personal injury cases? I think that's right, Your Honor. And this case was filed like a little over a year after the incident? I believe that's correct, Your Honor. Is there – does Virginia law, some states allow for pre-suit discovery? Do you know if Virginia permits that? I don't know the answer to that, Your Honor. Let me make another point or suggest another way that the plaintiffs could get some of this information, which is that actually victims in a high-profile, terrible shooting like this, they have access to, in some ways, more information than plaintiffs typically are going to be able to have access to pre-suit. There's an extensive police investigation. There's extensive media coverage. They wouldn't give it to them. Yeah, they tried to – they filed a four-year statute. They didn't get that. They did, and I would encourage the court – Their position is that they have standing on this complaint. That's their position, and that the district court erred in dismissing it on 12b-1. Isn't that right? That is right, Your Honor. And if the district court dismissed it on 12b-1, the district court didn't have any jurisdiction to address the 12b-6 issues at all. I also agree with that, Your Honor. Do you agree with that? I do. I think the district court's – Do you agree with me? Yes, I do, Your Honor. There was no jurisdiction to address the 12b-6 on the face of the opinion of the district court. That's right. Ex parte McCardle. Do you remember that one? Vaguely, Your Honor, from law school. It's been a minute. Yeah. Sam and Chase. Yeah. Once a court without jurisdiction, they can't address anything. So on your position, the district court's opinions with respect to that act, whatever you call it, which is a big acronym. The PLCAA. Are all advisory, dicta? What are they? In defense of the district court, I think it was reasonable for the court to explain its views and the alternative. But the district court ruled that there was a lack of standing. That's no jurisdiction. Standing is jurisdiction. Federal courts have to have jurisdiction. A federal judge has to have jurisdiction. I mean, we have got for a court to pronounce upon the meaning or constitutionality of a state or federal law when it has no jurisdiction to do so is by very definition for a court to act ultra vires. That's outside the law. Now, that is from Justice Scalia back around the turn of the century. So under your position, everything the district court said about the statute, the act, is ultra vires. Because you say that it was properly dismissed for lack of standing. So that's out. I don't disagree with your Honor's characterization of Article III standing. If I say there is standing, I disagree with you on the merits of your ruling. What would I do? Then I would have to address what the judge did on this act as well? I think that's correct, Your Honor. He ruled on all this stuff without any discovery being conducted on all the issues relating to this new enactment that Congress came up with when he didn't have any jurisdiction. And let me say one word in defense. Based on your argument, he doesn't have any jurisdiction. That is our position. Your argument is he had no jurisdiction to do that. If I decide or were to decide that this ought to be reversed on the 12B1 aspect of it, then I would also need to vacate everything after that until some judge had an opportunity to study it further. I don't think that's right, Your Honor. Well, it's ultra vires. You disagreed with me on, according to an ex parte McCardle going back to the middle of the 19th century. A court without jurisdiction can't rule. Let me make two points. In this country. In the federal system. That's what it says. A court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction by very definition is to act ultra vires. So everything about this act is ultra vires on the face of it of what the district court did here. It made a 12B1 ruling and then proceeded to make a 12B6 ruling. But the 12B6 ruling is ultra vires because the 12B1 ruling was in your favor. You can only rule on the 12B6 if it gets past the 12B1 and found there was standing. So there you are, and I'm just trying to figure out what I'm supposed to do. If I think there is standing, what I'm supposed to do with the part of it that was considered under 12B6. Your Honor, could I make two points? You can, absolutely. Make more than that if you want. As long as you've got time, you can make all the points you want to. The first point is that it's very clear under Fourth Circuit precedent that we as the appellees can raise alternative grounds for affirmance. And so if the court is persuaded, without regard to whether it was proper for the district court to reach the 12B6 issues, if the court is persuaded that there was standing, then it is totally in bounds for us to press alternative 12B6 grounds for affirmance of the judgment of the district court. That's the first point. The second point I would make picks up on something that I think I heard Judge Quattlebaum say during one of the colloquies with my friend on the other side, which is that to the extent that the court is persuaded that for some reason this coercive and determinative effects test is not the right test, or we're demanding too much of litigants on standing and causing traceability to collapse into what should be a merits inquiry into causation, the same reasons that the district court gave for why it thought there wasn't traceability under Article III are equally a justification for affirming on 12B6 grounds what the district court did. Counsel, would that be the case? The district court does find no jurisdiction and then does go and address the merits, and Judge King made some interesting points about that. But just looking at what the district court did on the merits part of it, it was all under the Act, right? It said first that the magazines were components, and second, didn't deal with any other merits parts of the Acts, but said you've got to show, if you're going to show a violation of statutes, you've got to show those violations approximately caused, and said there was no approximate cause. If you just forget the Act right now, don't all those claims on the merits, aside from an immunity under the Act, require approximate cause? Certainly negligence and negligence per se do, correct? That's correct, Your Honor. Even the advertising and consumer protection claims, whatever misrepresentation is alleged to have happened has to have caused the alleged injury, right? That's also correct. I think Virginia law is crystal clear on that. Is there any difference in the approximate cause argument that the district court did under the Act that would be any different from approximate cause under the merits of the four causes of action? I think the tests for approximate cause under Virginia law and the PLCAA are meaningfully different. Could you help me with that? Sure. The PLCAA, we read to impose a federal directness requirement. A federal what? A directness requirement, whereas under Virginia law, as I understand it, the inquiry focuses more on foreseeability rather than directness. I think the result in this case, based on the allegations and the complaint, is the same, irrespective of which of those two standards the court uses. The district court's opinion, it does rule on the basis of the PLCAA as it reaches the 12B6 issue, but it also draws on Virginia approximate causation law. I think the district court did that for good reason. How can they rule on the Act, and how can you all even talk about ruling on the Act, if there's no standing? You say that the judge is right, there's no standing, so you throw the complaint out. The law is that courts can't give advisory opinions. They have to have a case. They have to have jurisdiction. You can't pronounce on the law if you don't have jurisdiction. Judge King, I think that may be a fair criticism of the district court's opinion. And standing is jurisdiction. Correct. And that may be a fair criticism of the district court's opinion. It's not a reason that these 12B6 issues are not before this court as part of this appeal.  It is. He ruled there's no standing, first and foremost. The court ruled there's no standing. That's correct. And I'm pressing the 12B6. And then he said, but here's what I think about this Act. And he ruled several other pages of what he thought about the Act. And that is what they call dicta or advisory. It's without – it's just telling the public what he thinks. He could have made a speech or written a law review article or something. But the court, to act with effect, as Justice Scalia said, to pronounce on the meaning or constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, to act ultra vires. And, again, I'm here pressing the 12B6 arguments as an alternative ground for affirmance. And I don't understand my friend's – The point being is that where we are in the proceeding now, if we take Judge King's point that only 12B1 is before us, if we rule in the favor, that's the end of it. If we go against it, it goes back to the Supreme – to the court, saying, no, you did have standing jurisdiction and, therefore, proceed. And pretty much he's already done that. It's before us, though, as a judicial economy. We probably – the point being there, it's there. But let me ask you in response to one of the questions you had with Judge Quattlebaum regarding the negligence per se exception. That does not have a separate proximate cause requirement. So is that not different than the other claims? So the statute doesn't use the words proximate cause when it refers to negligence per se. We read the reference to negligence per se as carrying with it, necessarily, a proximate cause element because that is – I think we cite maybe the Dobbs treatise. So you have to read something that's not in the statute. In other words, you've got to – you think there's something about that statute that textually is not telling you what it is saying? It just doesn't have it. In other instances, it does. And typically when we have those kind of juxtapositions in a statutory context, we don't read into it what would seem, might sound, be reasonable. It might be something we do, but it's not what's in the text. You know, that's kind of where we're going with this whole business of, you know, looking at the text of what's there and what's there. But at least from that perspective, if we get there, it does seem clear that at least from a textual perspective, negligence per se does not have a proximate cause requirement. You do agree with that? I agree that the statute doesn't use the words negligence – or the statute doesn't use the words proximate cause in reference to the negligence per se claim. This is a traditional common law claim, however, that that is one of the sort of inherent elements of negligence per se, and I think it's undisputed. Yeah, this is a tort claim, and we establish – I'm a little dated in all this, but my understanding of negligence per se is that it deals with the duty and breach components of a negligence cause of action. If you violate a statute, you have violated a duty, and that gets you to the third cause of action of negligence, which is causation. Now, the statute that you violated may or may not have causation sort of stuff in it, but the question is whether you violated the statute, and then you apply it within the context of tort law. I agree with that, Your Honor. I think that's the right way of thinking about negligence per se. I want to go back to standing with you, and to the questions I asked earlier, we'll see where it goes, but I think the plaintiffs have a very difficult time with this determinative and coercive standard if it applies, and maybe we've got discovery issues, but I just think that that's an extraordinarily high burden. Most of the cases where that comes from are administrative law-type cases, or at least as I understood it. I just wonder if we're not collapsing Article III standing into the merits in a way that we shouldn't be doing. The plaintiffs here were injured unquestionably, and it's a traditional legal injury. It's traditional legal claims. They may be strong, they may be weak, but they're traditional sort of legal things. And standing, I get the traceability part of that, but it just feels like we're pulling something that applies in an administrative context in a way that's effectively the same as proximate calls, and it's like standing has become the tail that wags every dog. I guess a couple of reactions to that, Your Honor. The first thing I'd say is there are cases that apply this rubric in the context of private party litigation. I don't think there's any authority for the idea that this test is limited to cases involving the government or administrative law. Second, even if the court were persuaded that for some reason the normal standing test shouldn't apply here or should be relaxed, I think you end up in the same place on 12B6 grounds where they just haven't pleaded enough facts in the complaint to establish that the shooter saw these ads. That is the fact of so much is here on information and belief, the district court's treatment of it. The ultimate determinative question here, Judge Qualabong seems to go, I'm not sure to the extreme that, well, you just can't do it. I don't care how bad the ads are. And here they're alleging these ads are really, really bad. I mean, you couldn't imagine that a gun company could put together a series of ads and target five-year-olds and say, go look throughout your house and find mom or dad's gun and then shoot the first person you see over and over. And when a five-year-old does it, not to think that there ought not be something there. There is such a thing as false advertising. And that's the point here. That takes it at another level. That's where the Virginia statutes that come in and you're dealing with the predator-type offenses here. And we get back and forth. But if we launch out in terms of the separateness and the remoteness of it, we can say, oh, no, those are just ads. We don't even know if he saw them a whole bit. Boom, he did it. And we can spend all day long talking about traceability and a whole bit, but we're at 12 v. 6, and all that seems to be here is, is there enough, if you take it as true, that's here, that would allow them to go to the next stage in this case? No one has said anybody's going to win or lose this case one way or the other. And it's quite a burden for the plaintiffs, I think, beyond theirs to go there. But the question is before us, when we deal with Judge King's initial concern dealing with the standing, intertwined, I think, unquestionably, with when you get to Article III, you've got to go somewhat to the merits of it. You've got to deal with a case like this. But the question we have here that's before us is, when you say there's just not enough facts, then that tells me, well, how do you get the facts? And you gave me some examples. You said go sue the estate, go do that sort of stuff. I'm certainly going to ask the other side how they would do it, because I want to know how you do it, too, because a lot of generalities are thrown out there. Well, you can ask, you can get it, you can do this. But when you get into litigation, that stuff doesn't leap out of the pages as easy as it sounds in an estate action, which I've done in those cases. And I'm trying to figure out how you get it. I would like to have known how to do it, but it would have been interesting. So I think at this stage what you've just highlighted there is the factual basis. Is it enough? And what do we do at this stage? And where is it a matter for the courts to take into his hand that as a matter of law, we're going to end this right here when it's an information and belief type thing, and whether that information and belief, even if you show it, do you have to forecast the evidence or something like that? And I'm not sure at a 12 v. 6 you have to. But at a summary judgment stage you might be in a different ballgame. I see I'm over time. If I could just quickly respond. As long as you get questions. Okay, Your Honor. Just answer them best you can. So just quickly through three points. First, I'm not here to argue that there could never be standing in a case like this. Then not to argue what? I'm not here arguing that there could never be standing in a case like this. I'm here arguing that the specific allegations in this complaint are insufficient to establish. And that's what we're faced with. That's correct. Are the allegations sufficient to get past standing to sue? As to that question. And the district court said no. And this is on appeal. That's correct, Your Honor. And that's 12 v. 1. And as to that question, I would encourage the court to take a look at an opinion from the Fourth Circuit. I believe Judge Wynn wrote the opinion a couple of years ago, Langford v. Joyner, which talks about the general rule against group pleading. My friend on the other side points to allegations in the complaint that say the shooter generally saw all of the posts that are at issue in this case generally in one place or another. And that type of group pleading is really problematic for a reason. And there's a reason that the court generally doesn't permit it. And it's worth for a moment focusing on the allegations as to one of the defendants to see why. Think about a single defendant here, Torkmag. Torkmag is a defendant in this case because of two Instagram posts, both of which were over a year stale at the time that the shooting happened. And between the two posts, they generated less than 150 likes. Is it plausible that the shooter saw either of those posts? I would submit, based on the allegations in the complaint, that it's not. When you're saying that, I just want to understand that example. I mean, you're going specific, which, I mean, I get that point. But then you're saying did they plausibly plead, which sounds like you're back in 12B-6. And I think standing, I may be wrong, they just have to show standing as to one? I don't think that's right, Your Honor. They're seeking damages. They're not seeking an injunction. So they've got to establish standing individually with respect to each of the 14 defendants that are up here on appeal. Give me an example of hypothetically how, in a case like this, a party would plead standing under determinative and coercive standard, if that's the standard. So I don't know if it would be possible or not, Your Honor. You just said you're not saying they can't. I'm trying to see, what would they, in your mind, have to plead to satisfy standing if the standard is determinative and coercive? Sure. Nothing would satisfy you, right? Well, I'm going to be arguing for the defense regardless. That's right. You're on the other side. But I guess I'd point Judge Wambach. You're not going to be satisfied whatever they say. I think a hypothetical along the lines of what Judge Wynn suggested a few minutes ago might be sufficient. If we were talking about ---- I can't recall. Remind me what that would be. That would be a close one. You do an ad that puts up to five-year-olds and tells them how to go look through the house and find a gun to shoot everybody in the house, and they do it. Someone does it. That would be a close one. That would be hard for you and Judge Qualabong to argue against. Why would that? I mean, as horrible as that would be, it seems to me you're having to show under that standard that that ad not just calls the person who saw it to say, yeah, I'm going to go do that. You have to show that the ad in a determinative and coercive way did that. It would seem to me you'd have to show ads that were very suggestive, maybe these, maybe like that, and you'd have to have specific information about like an eggshell plaintiff, an eggshell purchaser. I think that's probably right, Your Honor, and I guess I'd submit cases like this ought to be hard to plead. The reason I say that is just the idea that a handful of posts on the Internet picked out among the ocean of media that's out there in the world. I would encourage the court, look at the specific ads and media posts that are in the complaint. This is not anything like the hypothetical that Judge Wynn was talking about a moment ago. But it does flatter us in from and standing into questions that may be a jury questions, and because you see these facts as being so, as using even this determinative and coercive, there are predictable effects that can happen. There's a level of predictability that one can reach, and of course, then that's when it gets into the soft area of the it is what the court says it is. You don't really have a definition of determinative and coercive to the extent that we can use nice words to get there. Then when we get in the uses of the facts of it, we then do the weighing, even though we can call it a legal conclusion. It really is a jury question when you get down to it, and so that's why we're having difficulties here. If we lock ourselves in on terms and define them every time a case comes by by the way we feel about it, it lacks the kind of certainty in terms of how we do these things because there is a predictability effect. I mean, if you do certain things, it's not hard to figure out if you do this, then at least that's the whole point of false advertising. I mean, there is a great, you know, of doing things to say, I mean, it could be say, well, you know, I'm going to advertise this that if you drink bleach or something like that, I'm not trying to pull anything in it, that you'll be cured of cancer or something like that. And that's not true. But it may have the determinative effect and the coercive effect doesn't say you coerced them, but it certainly has a predictability effect. Well, and it could be determinative even if it's not coercive. But I guess, you know, one thing I'd say here is that these kinds of hypotheticals that we're talking about are nothing like the posts that actually appear in the complaint. The posts in the complaint are mostly guys wearing camo holding guns, and the idea that this particular set of 52 posts, mostly on Instagram, not the rest of the media out there in the world, not all the movies that glorify gun violence, not all the images of soldiers holding guns that you could find on the news or anywhere else, none of that, but that this specific set of 52 posts on the Internet caused the shooting. That's their burden to plead under 12b-6, and they haven't done it. I think we understand your position. Thank you, Your Honor. Thank you, Mr. Barnett. Ms. Lockwood. Start with that point, that judge, that was brought out earlier by your opponent. You could get all this by filing an action against the estate. You could discover and find information that potentially would give you the requisite traceability information or information that would say it's determinative in course based upon the facts that you can get from that. If so, then did you or why did you do that? Yes, Your Honor. I don't think that's a realistic path for filling the gap here that we have used information and belief pleading to fill, and that's because, of course, proceedings like that take time and would cause statute of limitations, on the other hand, for a suit like this, and also it's not, you know, someone mentioned the FOIA suits earlier. You know, that's kind of your best avenue for getting information, unless it's a shooting where the police voluntarily disclose information. But your FOIA information is all about other manufacturers, it looks to me. As I looked at it, it was primarily in seeking the identification of suppliers of weapons and ammunition. Maybe I'm wrong there. But, again, I keep beating this horse because I feel like that's what the standard requires. It seems to me the key issue is what was the status of this purchaser? What was the psychological, medical, mental health, things like that? And that's not in your FOIA request. Actually, Your Honor, we have outstanding FOIA litigation, ongoing FOIA litigation against the FBI, which has access to the shooter's computer. But is that in your FOIA pleading seeking, that type of information? I'm not sure which pleadings you're referring to, but we have requested that type of information from the FBI, and it's been withheld from us. We're in ongoing litigation. Thank you. So I do think that that's a path where possibly you could obtain information about the shooter, their methods in planning this, and electronically, certainly what they were exposed to. We filed that litigation, or we issued those requests over two years ago, or three years ago. Did you attempt to determine whether the shooter was on Instagram, Facebook, and X? We were not able to determine based on the information that we had. Sometimes what happens is these shooters sort of delete their history before a shooting happens. So I'm not sure that that tells us anything one way or the other. I did just want to address two things quickly. Your Honor, you'd asked about the false advertising statute, and that statute requires that there be an advertisement made with intent to sell that contains a misrepresentation and that plaintiff suffered a loss. So it does not itself have a requirement that the person who's suing be a part of the consumer. But it's talking about a misrepresentation, and you're not alleging a misrepresentation. You're alleging an encouragement to do what the ad says. Well, we're alleging deceptive and misleading advertising, and so that's part of that. But, Your Honor, there's an EDBA case, BHR Recovery 355 FSEP 3D 416, which addresses sort of the scope of the false advertising statute and may be helpful to you. And then also on the – and I see I'm over time – but on the proximate cause issue, quickly, counsel mentioned the direct requirement under federal law. You know, that standard has been applied in cases like RICO, Clayton Act, where you have concerns about derivatively injured plaintiffs where it's difficult to apportion damages. It's never been applied in a PLACA case. And there was a question about the proximate cause standard and where it comes. I agree negligence per se under Virginia law requires proximate cause, but through the foreseeability lens that the district court used here, there's no basis to take a – to the extent there is a higher federal proximate cause standard, there's no basis to read that into the statute. And instead, the statute suggests that, you know, it's a lower standard, that foreseeability is the right lens to look at this. PLACA's text, the product liability exception, refers to harm resulting directly from a product's uses, things being the sole proximate cause, and that language is not in the predicate exception. And I see I'm over my time. If there are any further questions, happy to address them. Otherwise, we request that the court reverse the district court's decision. Thank you. Thank you very much, Ms. Lockwood. And we'll come down and re-counsel and then take a brief break and come back to hear the next case. This honorable court will take a brief recess.
judges: Robert B. King, James Andrew Wynn, A. Marvin Quattlebaum Jr.